UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. 2:17-cr-00127-KJM |
|---|---|
| Plaintiff, | |
| v. | ORDER |
| DORIAN JALIAS MILES, | |
| Defendant. | |

Defendant Dorian Jalias Miles has filed an emergency motion seeking compassionate release and a reduction of his sentence to time served under 18 U.S.C. § 3582(c)(1)(A)(i). Mot., ECF No. 62. The government opposes the motion, Opp'n, ECF No. 63, and, with the assistance of court-appointed counsel, defendant has lodged a reply, Reply, ECF No. 66. Defendant seeks release in light of the increased risks to his health he says the coronavirus ("COVID-19") pandemic poses to him as someone who is in custody, with his particular health issues. For the following reasons, defendant's motion is DENIED.

I.      BACKGROUND

  A.    COVID-19 and the BOP

No one disputes that "[d]ue to the novel coronavirus pandemic, we are in extraordinary times." *United States v. Daniels*, No. 19-CR-00709-LHK (NC), 2020 WL 1815342, at *2 (N.D. Cal. Apr. 9, 2020) (internal quotation marks and citation omitted). The

crisis triggered by the virus is global, leading to many emergency declarations, including a presidentially-declared national emergency. *See* Proclamation No. 9994, 85 Fed. Reg. 15,337 (Mar. 13, 2020).

As the coronavirus has spread throughout the United States, it has reached jails and correctional facilities as well, starting some time ago now. *See, e.g.*, *Daniels*, 2020 WL 1815342, at *3 (citing Timothy Williams, et al., *Jails are Petri Dishes*, N.Y. Times (Mar. 31, 2020)[1]). As of June 15, 2020, the BOP reported 1,220 federal inmates and 168 BOP staff diagnosed with the virus and 85 inmate deaths.[2] According to the government, there have been zero inmates and eight staff diagnosed with COVID-19 at defendant's current facility, FCI Sheridan. Opp'n at 9 (citing https://www.bop.gov/coronavirus/). Defendant believes the fact that eight staff members are infected makes it highly likely the infection rate is greater due to unreported cases. Reply at 9. Responding to the risks in federal prisons generally, Attorney General William Barr has issued two memoranda to the BOP Director, directing BOP to maximize the release of inmates to home confinement at institutions most affected by COVID-19, by making individualized determinations balancing inmates' vulnerability to infection and public safety. *See* Mem. from U.S. Att'y Gen. William Barr to Director of Bureau of Prisons (April 3, 2020) (second memorandum supplementing original after passage of the CARES Act).[3]

B.     Defendant's Conviction Offense and Health Condition

On October 30, 2019, defendant was convicted on one count of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). ECF No. 47. The court sentenced him to 64 months imprisonment and 36 months supervised release and ordered him to pay a $100 special assessment. *Id.* He has been in custody since November 9, 2017, just over 31 months at this point, and, good behavior permitting, is projected to be released on May 28, 2022. Reply at 1.

---

[1] https://www.nytimes.com/2020/03/30/us/coronavirus-prisons-jails.html.

[2] As have other courts, this court takes judicial notice of the information presented by the BOP at https://www.bop.gov/coronavirus/. *See Daniels*, 2020 WL 1815342, at *3.

[3] https://www.justice.gov/file/1266661/download.

Defendant is 27 years old and has suffered from asthma since the age of 4. Presentence Investigation Rep. ("PSR"), ECF No. 44, at 2, 12; Reply at 7; Medical Records, ECF No. 68-1, at 3[4] (noting asthma history). He also claims to suffer from chronic bronchitis and obesity, but has not provided independent documentation of these conditions. Reply at 9, 12. He argues these ailments, combined with the conditions at FCI Sheridan, put him at great risk of contracting COVID-19, creating an extraordinary and compelling reason justifying an immediate sentence reduction under 18 U.S.C. § 3582(c)(1)(A)(i). Reply at 12.

## II.   LEGAL STANDARD

Defendant brings his motion for release under 18 U.S.C. § 3582(c)(1)(A)(i), which allows a court to modify a sentence under certain circumstances. Under the current version of the statute, a motion for modification may be made by either the Director of the BOP or by a defendant "after the defendant has fully exhausted all administrative rights to appeal[.]" 18 U.S.C. § 3582(c)(1)(A).

In deciding whether to modify a sentence and grant compassionate release following exhaustion, as relevant here, a district court engages in a two-step process. First, it must consider the familiar 18 U.S.C. § 3553(a) factors applicable at the original sentencing, to the extent they remain applicable at the time a motion is brought. 18 U.S.C. § 3582(c)(1)(A). Second, the court must find that "extraordinary and compelling reasons warrant such a reduction." *Id.* An alternative provision provides for consideration of a motion by a defendant who is 70 years or older, and so is not applicable here. 18 U.S.C. § 3582(c)(1)(A)(ii).

The Sentencing Commission has addressed what qualifies as "extraordinary and compelling reasons" to release a defendant from BOP custody in a policy statement. *See* U.S.S.G. § 1B1.13. Defendant argues the policy statement is not binding as it precedes adoption of the First Step Act, which was amended by § 3582 on December 21, 2018, and provided for defendant's ability to bring this motion in the first place. Reply at 13–15 (citing, inter alia, *United States v. Mondaca*, No. 89-CR-0655 DMS, 2020 WL 1029024 (S.D. Cal. Mar. 3, 2020)

---

[4] Due to their sensitive nature, defendant's medical records have been filed under seal. *See* ECF No. 67.

3

("'[A] growing number of district courts have concluded the Commission lacks' a policy statement applicable to the post-First Step Act statute."). The government argues the policy statement is still binding. Opp'n at 10 (citing *Dillon v. United States*, 560 U.S. 817, 827 (2010)).

Since passage of the First Step Act, many courts have held that the policy-statement provision, previously applicable to § 3582, "no longer fits with the statute," *United States v. Cantu*, No. 1:05-CR-458-1, 2019 WL 2498923, at *4 (S.D. Tex. June 17, 2019), because it has not been amended since the First Step Act to reflect that both defendants and the BOP may move for compassionate release. *See United States v. Allen*, No. 2:17-CR-0229-TOR-12, 2019 WL 6529113, at *2 (E.D. Wash. Dec. 4, 2019); *United States v. Willingham*, No. CR113-010, 2019 WL 6733028, at *2 (S.D. Ga. Dec. 10, 2019) (noting "[i]n at least four judicial districts, courts have determined that the First Step Act signaled an intent from Congress that district courts may now consider whether extraordinary and compelling reasons for compassionate release exist other than those delineated in U.S.S.G. § 1B1.13 n.1"). Nevertheless, courts in this circuit often "turn[ ] to U.S.S.G. § 1B1.13 to provide guidance on the 'extraordinary and compelling reasons' that may warrant a reduction in sentence." *United States v. Esparza*, No. 1:07-CR-00294-BLW, 2020 WL 1696084, at *2 n.2 (D. Idaho Apr. 7, 2020) (quoting *United States v. Gonzalez*, No. 2:18-CR-0232-TOR-15, 2020 WL 1536155, at *2 (E.D. Wash. March 31, 2020)); *see also Riley v. United States*, No. C19-1522 JLR, 2020 WL 1819838, at *8 (W.D. Wash. Apr. 10, 2020) ("In the absence of contrary controlling authority, and given the limited statutory exceptions to the general rule of the finality of judgments, this court will continue to follow the guidance of the Sentencing Commission's policy statement limiting the scope of "extraordinary and compelling reasons" that warrant compassionate release under § 3582(c)(1)." (citing *Dillon*, 560 U.S. at 827)); *but see United States v. Rodriguez*, No. 17-cr-00021-WHO-1, 2019 WL 6311388, at *7 (N.D. Cal. Nov. 25, 2019) ("This court follows the growing number of district courts that have concluded that, in the absence of applicable policy statements, courts can determine whether any extraordinary and compelling reasons other than those delineated in U.S.S.G. § 1B1.13 cmt. n.1(A)-(C) warrant compassionate release."); *United States v. Chan*, No. 96-cr-00094-JSW-13, 2020 WL 1527895, at *4–5 (N.D. Cal. March 31, 2020) (noting split in authority and following

4

*Rodriguez*); *United States v. Kesoyan*, No. 2:15-CR-236-JAM, 2020 WL 2039028, at *4 (E.D. Cal. Apr. 28, 2020) (joining district courts "that have concluded they also have discretion under Subdivision (D)").

This court refers to the Sentencing Commission's policy statement for guidance, without deciding whether it is binding in this context. The relevant policy statement outlines four categories of circumstances that may constitute 'extraordinary and compelling reasons' for a sentence reduction:

> (1) the defendant suffers from a medical condition that is terminal or substantially diminishes the defendant's ability to provide self-care in a correctional environment; (2) the defendant is at least 65 years old, is experiencing a serious deterioration in health due to the aging process, and has served at least 10 years or 75% of his or her term of imprisonment; (3) family circumstances involving the death or incapacitation of the caregiver of the defendant's minor child or the incapacitation of the defendant's spouse or registered partner; or (4) other reasons, other than or in combination with the other listed circumstances, that are extraordinary and compelling.

*United States v. Allen*, No. 2:17-CR-0229-TOR-12, 2019 WL 6529113, at *2 (E.D. Wash. Dec. 4, 2019) (citing U.S.S.G. § 1B1.13, Application Note 1).

III.   DISCUSSION

    A.   Exhaustion

As a threshold matter, the exhaustion requirement under § 3582 is not at issue and so the court does not reach any questions raised by the parties' briefing on this threshold point. The parties agree defendant has satisfied the statutory prerequisites to seek compassionate release. *See* Opp'n at 4 ("[A]s of this filing, more than 30 days have passed, satisfying the statutory requirement in 18 U.S.C. § 3582(c)(1)."[5]); Reply at 11 ("The parties agree that Mr. Miles has Exhausted his Administrative Remedies.").

    B.   "Extraordinary and Compelling Reasons"

Defendant argues his asthma and obesity place him in a "high risk group for serious illness or death" if exposed to COVID-19. Reply at 12. Specifically, he argues the

---

[5] The court in other cases has signaled its skepticism with respect to the government's reading of the exhaustion requirement in the statute.

inherent limitations of confinement, proximity to others and access to precautionary sanitation measures, make it impossible to follow CDC recommendations for those with compromised respiratory systems, including asthma. *Id.* Defendant's BOP health records detail the history of his condition. *See generally* Medical Records (noting, for example, history of asthma since childhood and requesting an inhaler for treatment).

The government argues defendant fails to demonstrate an "extraordinary and compelling" reason for release because (1) his health condition does not amount to a serious, chronic health condition under USSG § 1B1.13, and (2) regardless, he cannot demonstrate he is not a continuing danger to the safety of others or the community at large. Opp'n at 11–14. Moreover, the government argues that even if defendant were statutorily eligible for release, the mandatory factors under § 3553(a) do not support a shorter sentence. *Id.* at 14–15.

While respiratory issues can elevate the level of risk of contracting COVID-19, defendant has not on this record shown his condition amounts to an "extraordinary and compelling" reason for release under § 3582(c)(1)(A). The CDC advises that "[p]eople with moderate to severe asthma may be at higher risk of getting very sick from COVID-19." *See* Centers for Disease Control and Prevention, *People with Moderate to Severe Asthma*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/asthma.html (last visited June 2, 2020). While defendant presents evidence to support the conclusion his asthma is chronic and something he has lived with since childhood, he does not present evidence or argument his condition is "moderate to severe." BOP's clinical practice guidelines suggest those suffering from "moderate persistent" to "severe persistent" asthma conditions exhibit, at a minimum, daily symptoms, nighttime awakenings, some limitation or interference with normal activity and varying degrees of lung functionality. *See* BOP Clinical Practice Guidelines, *Management of Asthma*, https://www.bop.gov/resources/pdfs/asthma.pdf (last visited June 2, 2020).[6] While defendant's medical records indicate he has experienced "short[ness] of breathing and has some wheezing sometimes," they contain no explanation as to what daily impediments are created by

---

[6] The court takes judicial notice of the BOP's clinical practice guidelines, Fed. R. Evid. 201, and notes the court in *Woolem v. United States, infra,* referenced these guidelines as well.

his condition. Medical Records at 1. Rather, the records suggest his condition is not "moderate to severe," in part because he only recently requested treatment. *See id.* at 1 (May 20, 2020 examination in which defendant explained, "I've had asthma since I was a child, but haven't had my inhalers since I came into BOP custody, for about 3 years."), 3 (noting "no medicine or treatment needed since 8th grade"); *see also* PSR at 12 (noting defendant "was previously prescribed an albuterol inhaler to treat [his] condition. However, he is not currently prescribed any medications and claims he is in good health"). Even assuming without deciding his asthma rises to the level of "moderate to severe," defendant provides no explanation as to how his condition is responding to any treatment he may have received, a factor relevant to his allegations of heightened risk. *See Woolem v. United States*, No. CR 13-00471 SOM, 2020 WL 2820140, at *5 (D. Haw. May 29, 2020) ("[T]he court does need to consider how well even moderate or severe asthma is or is not being controlled by medication or other treatment, as well as any effect the treatment might have on complications arising from COVID-19."). While defendant's asthma condition may indeed elevate his level of vulnerability, the court cannot, on this record, find the severity of his condition equates to an "extraordinary and compelling" reason envisioned by § 3582(c)(1)(A).

Moreover, defendant presents no evidence to support his claim he now suffers from "chronic bronchitis" or that his "obesity" elevates his level of risk. Reply at 7, 9. Defendant states he has a Body Mass Index ("BMI") of 30.3, which "according to one calculator," places him in the category of "obese," but CDC guidelines advise that only those with "severe obesity," defined as those with a BMI of 40 or above, are at greater risk in the face of COVID-19. *See* Centers for Disease Control and Prevention, *Groups at Higher Risk for Severe Illness*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html#severe-obesity (last visited June 2, 2020). Additionally, defendant is 27 years of age, which undercuts the severity of the risk he alleges based on the CDC's current guidance. *See id.* (advising those 65 years and older are at higher risk for severe illness and death). Consequently, there is no evidence defendant's additional conditions, if supportable, increase his overall risk level.

On this record, the court cannot find defendant faces an "unprecedented, extremely serious health risk posed by continued detention, exacerbated by [his] health conditions," *Daniels*, 2020 WL 1815342, at *4, warranting a reduction in his sentence, *cf. Gonzalez*, 2020 WL 1536155, at *2–3 (finding compassionate release warranted under "other reasons" category of USSG § 1B1.13, cmt. n.1(D) based on COVID-19 pandemic paired with elderly defendant's chronic obstructive pulmonary disease including significant emphysema).

Given this conclusion, the court need not reach the balance of the § 3852(c) analysis.

IV.  CONCLUSION

Defendant's Motion to Reduce Sentence, ECF No. 62, is DENIED.

IT IS SO ORDERED.

DATED: June 15, 2020.

_____
CHIEF UNITED STATES DISTRICT JUDGE