UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| United States of America, | No. 2:17-cr-00127-KJM |
| Plaintiff, | ORDER |
| v. | |
| Dorian Jalias Miles, | |
| Defendant. | |

Defendant Dorian Jalias Miles moves for compassionate release under 18 U.S.C. § 3582 for the second time. For the reasons below the court **grants** the motion.

I.   **BACKGROUND**

Mr. Miles pled guilty to one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). J. and Commitment 1, ECF No. 47. The undersigned sentenced him to 64 months imprisonment, 36 months supervised release and payment of a $100 special assessment. *See generally, id.* Mr. Miles is currently serving his sentence at FCI Sheridan. Mot. 9, ECF No. 70. He has served approximately 36 months of his sentence and he currently is projected to be released on May 28, 2022. Opp'n Ex. 1 (BOP Public Information Inmate Data) at 4, ECF No.74-1. While at FCI Sheridan, Mr. Miles has had no disciplinary issues, Mot. Ex. D (Inmate Discipline Data) at 1, ECF No 70-3, has completed various programs including a Drug Abuse Education Course, Ex. J, ECF No. 77-2, and acted at one point to stop an assault on a BOP

1

staff member, Mot. Ex. A, ECF No. 70-1.  With application of his good time credits, he has served about 67 percent of his sentence.  *Id.*

Mr. Miles' medical records indicate he has asthma, Presentence Investigation Rep. ("PSR") at 12, ECF No. 44; Mot. Ex. C (Medical Records) (under seal),[1] and is obese. Medical Records (under seal).  He also has a history of smoking marijuana.  *Id.*; PSR ¶ 54.

On May 18, 2020, Mr. Miles moved for compassionate release under 18 U.S.C. § 3582, Prev. Mot., ECF No. 62; the court denied his motion without prejudice.  At the time, he did not provide adequate evidence of his medical conditions or explain how his conditions placed him at a greater risk in the face of the COVID-19 pandemic.  Order 6–8, ECF No. 69.

Mr. Miles has renewed his motion.  Mot., ECF No. 70; Reply, ECF No. 76.  The government continues to oppose his release.  Opp'n, ECF No. 74.

**II.   LEGAL STANDARD**

The district court that imposed the sentence on a criminal defendant has authority to modify the term of imprisonment under the compassionate release statute, 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act of 2018.[2]  Under the statute, a court may grant a defendant's motion to reduce his prison term, provided the defendant first satisfies an exhaustion requirement.  18 U.S.C. § 3582(c)(1)(A), 3582(c)(1)(A)(i).  Generally, exhaustion requires defendants to seek compassionate release with the BOP and exhaust all appeals or show that at least 30 days have elapsed without a response from the BOP, whichever is earlier.  *United States v. Bradley*, No. 14-00293, 2020 WL 3802794, at *3 (E.D. Cal. July 7, 2020).  Once the defendant has exhausted administrative remedies, the analysis is twofold.  First, the court must find "extraordinary and compelling reasons" to release a defendant from BOP custody.  18 U.S.C. § 3582(c)(1)(A).  Second, the court must consider the same factors applicable at the original

---

[1] The court **grants** the parties' requests to file portions of Mr. Miles' medical records under seal to protect his private medical information.  ECF Nos. 71 and 75; *See Chester v. King*, No. 1:16-01257, 2019 WL 5420213, at *2 (E.D. Cal. Sep. 10, 2019) ("This court, and others within the Ninth Circuit, have recognized that the need to protect medical privacy qualifies as a 'compelling reason' for sealing records.").

[2] Pub. L. No. 115-391, 132 Stat. 5194 (Dec. 21, 2018).

sentencing, enumerated in 18 U.S.C. § 3553(a), to the extent they remain applicable at the time the motion is brought. *Id*.

The statute further requires that a sentence "reduction [be] consistent with applicable policy statements issued by the Sentencing Commission." *Id*. § 3582(c)(1)(A). In 2006, the Sentencing Commission issued a policy statement addressing what qualifies as "extraordinary and compelling reasons" to release a defendant from BOP custody; the policy was last amended November 1, 2018. *See* U.S.S.G. § 1B1.13. Since the passage of the First Step Act, district courts have disagreed whether U.S.S.G. § 1B1.13 remains binding. This court, as it has in previous cases, considers the Sentencing Commission's policy statement as guidance, without determining whether it is binding in this context. The court notes as relevant here that, in addition to listing possible "extraordinary and compelling reasons," section 1B1.13 "imposes an additional consideration of whether the defendant is a danger to the safety of any other person or to the community." *United States v. Numann*, No. 16-00025, 2020 WL 1977117, at *2 (D. Alaska Apr. 24, 2020) (citing U.S.S.G. § 1B1.13(2)).

### III. ANALYSIS

The parties do not dispute that Mr. Miles has exhausted his administrative remedies as required by § 3582(c). *See* Opp'n at 4. The court thus considers whether the motion is supported by extraordinary and compelling reasons and the sentencing factors.

#### A. Extraordinary and Compelling Reasons

Mr. Miles moves for compassionate release, arguing his history of asthma and smoking as well as his current BMI place him at higher risk of developing severe COVID-19 symptoms. The government opposes, arguing Mr. Miles' medical records do not indicate his asthma is moderate or severe; additionally, while he has a history of smoking marijuana, the CDC specifies only a history of cigarette smoking as increasing the risk of serious COVID-19 illness. Opp'n at 9 (citing Centers for Disease Control (CDC), *People Who Are at Higher Risk*[3]). The government

---

[3] https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html (accessed Dec. 8, 2020) (routing reader to CDC, *People at Increased Risk*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/).

3

1   also argues that in January 2020, when his weight was last documented, Mr. Miles was only three
2   pounds over the weight qualifying him as obese, and he may no longer weigh the same. *Id* at 8.
3       Other district courts have found comorbidities can increase the risk of severe illness from
4   the coronavirus, warranting compassionate release. *See Bradley*, 2020 WL 3802794, at *5
5   ("defendant's combination of serious health conditions weighs heavily in favor of a sentence
6   reduction"). Among qualifying comorbidities are moderate to severe asthma and obesity. *See,*
7   *e.g., United States v. Rodriguez*, No. 3:17-4477, 2020 WL 4592833, at *1 (S.D. Cal. Aug. 5,
8   2020) (granting motion for compassionate release for petitioner suffering from asthma and
9   obesity). Mr. Miles presents his documented history of asthma starting in childhood, *see*
10  *generally*, Medical Records (under seal), but the government is correct that his medical records
11  do not indicate the severity of his asthma, Opp'n at 9.
12      Courts, including this court, still have found obesity alone can support a motion for
13  compassionate release. *See, e.g., United States v. Richardson*, No. 2:17-00048, 2020 U.S. Dist.
14  LEXIS 108043, at *8 (E.D. Cal. June 19, 2020) (finding "obesity alone" places a defendant "at
15  higher risk of COVID-19 complications); *United States v. Levario*, No. 12-00399, 2020 U.S. Dist.
16  LEXIS 105211, at *9 (E.D. Cal. June 15, 2020) (same). While the court previously found Mr.
17  Miles' BMI was insufficient to provide "extraordinary and compelling" reasons for release, Order
18  at 7 (citing CDC, *Groups at Higher Risk for Severe Illness* (accessed June 2, 2020)[4]), the CDC
19  has since updated its research to indicate that individuals with a BMI between 30 and 40 kg/m are
20  at high risk. CDC, *People with Certain Medical Conditions* (updated Dec 1, 2020).[5] Given that
21  the only information in the record places Mr. Miles in this at-risk group, and the suggestion that
22  he may have lost weight is purely speculative, the court finds his obesity weighs in favor of
23  release.
24  /////

---

[4] The court's previous citation is no longer current and appears to have been superseded by the CDC research now cited here. *See* Hyperlink routing reader to CDC, People at Increased Risk, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/.

[5] https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html#obesity (accessed Dec. 21, 20e0).

At the time of the parties' briefing on the pending motion, FCI Sheridan had reported only two cases of COVID-19 among incarcerated individuals, five among the staff, and six recovered incarcerated persons. Opp'n at 5 (citing BOP, *COVID-19 Coronavirus*[6]). But the numbers now have grown, with FCI Sheridan currently reporting fourteen confirmed cases among incarcerated individuals and ten infected staff members. BOP, *COVID-19 Coronavirus* (accessed Dec. 23, 2020). As this court previously has observed, the number of "confirmed cases of COVID-19 at FCI Sheridan may simply be an indication of how much testing had been conducted or not" noting that even "zero confirmed cases is not the same as zero COVID-19 cases." *Bradley*, 2020 WL 3802794, at *6 (internal quotations and citation omitted); *see also United States v. Dana*, 467 F. Supp. 3d 962, 967 (D. Or. 2020)("BOP does not disclose whether or to what extent [FCI Sheridan] is testing symptomatic or asymptomatic inmates, both or neither"); *United States v. Etzel*, 466 F. Supp. 3d 1135, 1139 (D. Or. 2020) (even when no active cases had been detected "at FCI Sheridan, infection can spread with deadly speed"); *United States v. Moore*, 466 F. Supp. 3d 1148, 1151 (D. Or. 2020) (same); *United States v. Morris*, No. 99-0174, 2020 WL 4344945, at *3 (W.D. Wash. June 22, 2020) ("COVID-19 can spread rapidly in [FCI Sheridan, which] with their tight quarters and unavoidable contact between inmates and staff, [is] the perfect breeding ground for the virus").

On the record now before it, the court finds Mr. Miles' conditions in concert with his placement at FCI Sheridan during the COVID-19 pandemic provide extraordinary and compelling reasons for his release.

**B.     Sentencing Guidelines**

The Sentencing Guidelines' policy statement instructs "the court should consider the sentencing factors set forth in 18 U.S.C. § 3553(a) when deciding a motion for compassionate release, and the [c]ourt should not grant a sentence reduction if the defendant poses a risk of danger to the community, as defined in the Bail Reform Act." *United States v. Gonzalez*, 451 F. Supp. 3d 1194, 1196 (E.D. Wash. 2020) (citing U.S.S.G. § 1B1.13); *see also* 18 U.S.C.

---

[6] https://www.bop.gov/coronavirus/index.jsp (accessed Dec. 8, 2020).

1  § 3582(c)(1)(A).  "In assessing danger, physical violence is not the only form of danger

2  contemplated by the statute.  Danger to the community can be in the form of continued narcotics

3  activity or even encompass pecuniary or economic harm."  *United States v. Zaragoza*, No. 08-

4  0083, 2008 WL 686825, at *3 (N.D. Cal. Mar. 11, 2008).

5        The government argues the sentencing factors weigh against Mr. Miles' release based on

6  his criminal history.  Opp'n at 10.  Mr. Miles does have a significant history of convictions over

7  the last ten years, involving a range of conduct including misdemeanor drug possession, felony

8  carjacking, misdemeanor provision of harmful matter to a minor, misdemeanor domestic violence

9  and a prior state felony conviction for felon in possession; twice he attempted to evade law

10  enforcement in high speed chases.  PSR ¶¶ 28-33.  Mr. Miles' history weighs against his release.

11  At the same time, his current federal conviction offense of felon in possession of a firearm is

12  nonviolent.  *United States v. Dailey*, No. 2:13-00118, 2020 WL 4504449, at *4 (E.D. Cal. Aug. 5,

13  2020) (citing *United States v. Twine*, 344 F.3d 987, 988 (9th Cir. 2003) (felon in possession of a

14  firearm does not raise presumption of danger to community)).  By the time he pled guilty, Mr.

15  Miles had accepted responsibility for his actions, PSR ¶ 10, and as the government notes, his

16  conduct while incarcerated has been exemplary, Opp'n at 10.  He has no record of discipline,

17  Mot. Ex. D at 1, and acted selflessly to protect a BOP staff member from assault, *id.* Ex. A.  He

18  has also participated in various classroom and rehabilitation programs and paid his special

19  assessment in full.  *Id.* Ex. D at 5.  The court finds that Mr. Miles' post-sentencing rehabilitation

20  in combination with his exemplary conduct while incarcerated is significant, and gives these

21  factors appropriate weight here.  *See United States v. Phillips*, 469 F. Supp. 3d 180, 185 (S.D.

22  N.Y. 2020) (noting "both Congress and the Sentencing Commission have provided that

23  rehabilitation of the defendant *alone* shall not be considered an extraordinary and compelling

24  reason . . . [but] rehabilitation in combination with the other factors can constitute, in their

25  entirety, . . . extraordinary and compelling reasons." (emphasis in original) (internal quotation

26  marks, case citations omitted)).

27        On balance, the court finds the sentencing factors weigh in favor of granting Mr. Miles'

28  motion, even if narrowly.

Moreover, Mr. Miles has presented the court with a thorough release plan: he will live with his grandfather, whose home allows for proper social distancing; he has positive support from his grandfather and a cousin; and he has a lead on employment with a construction company. The court's own probation office has conferred with the probation office in the Northern District of California, which will be supervising Mr. Miles if he is released. That office has confirmed Mr. Miles' release plan is appropriate and requested an additional condition of supervised release to which Mr. Miles does not object. That condition is imposed below.

## IV.    CONCLUSION

Mr. Miles' motion for compassionate release is **granted**. The court modifies his previously imposed sentence of incarceration of 64 months to time served, with the previously imposed term of supervised release for 36 months to follow.

There being a verified residence and an appropriate release plan in place, this order is stayed for up to seven days to make appropriate travel arrangements and to ensure defendant's safe release. Mr. Miles shall be released as soon as appropriate travel arrangements are made. If more than seven days are needed to make appropriate travel arrangements and ensure defendant's safe release, then the parties shall immediately notify the court and show cause why the stay should be extended.

Mr. Miles shall be subject to the following special condition based on his prior misdemeanor for Giving Harmful Matter to a Minor: he shall participate in an evaluation to determine if sex offender treatment is appropriate, as directed by the probation officer. The probation officer shall disclose the presentence report and/or any previous treatment evaluations or reports to the treatment provider.

The court orders Mr. Miles to self-isolate for fourteen days in his residence once he arrives there, as a means of protecting his health and others while also complying with all applicable public health orders.

The requests to file under seal, ECF Nos. 71 and 75, are **granted.**

/////

/////

1      This order resolves ECF No. 70, 71 and 75.

2      IT IS SO ORDERED.

3   DATED: December 23, 2020.

_____
CHIEF UNITED STATES DISTRICT JUDGE